**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

FIREMAN'S FUND INSURANCE COMPANY, a California corporation,

    Plaintiff,

v.

OBERNDORF PROPERTIES, a Colorado general partnership,
OBERNDORF PROPERTIES LTD., a Colorado limited liability company,
STEELE STREET LIMITED II, a Colorado limited partnership,

    Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Fireman's Fund Insurance Company ("Fireman's Fund" or "Plaintiff") complains as follows:

**INTRODUCTION**

1. In this insurance action, Plaintiff seeks a judicial declaration that a property-insurance policy it issued does not require Plaintiff to participate in an appraisal to determine whether the brick siding of a three-story commercial building has experienced storm damage. The appraisal provision in the subject insurance policy applies only to one class of disputes, namely, disagreements over the "amount of the loss" to covered property. Such provisions may be properly invoked when the insurer and the policyholder engage in a valuation dispute regarding the cost of repairing or replacing property. But no such dispute exists here. Following an extensive investigation, Plaintiff determined that the brick veneer of the subject building was not damaged. Plaintiff agreed to pay for other verified damage caused by the storm. The brick,

however, was determined not to have changed cosmetically or physically from its pre-storm condition, and it is undisputed that the brick façade's function and lifespan are unimpaired. Plaintiff accordingly has disputed coverage for the insured's claim for damage to the brick. Unwilling to accept Plaintiff's coverage determination, the insured now seeks appraisal of the threshold legal question of what constitutes "damage" under the subject insurance policy. Plaintiff has brought this action to obtain a judicial declaration that this issue is not a proper subject for appraisal under the subject insurance policy.

## **GENERAL ALLEGATIONS**

2. Plaintiff is a California corporation with its principal place of business in California.

3. Defendant Oberndorf Properties is a Colorado general partnership. Defendant Oberndorf Properties, Ltd. is a Colorado limited liability company. Steele Street Limited II is a Colorado limited partnership. Oberndorf Properties, Oberndorf Properties, Ltd. and Steele Street Limited II are collectively referred to in this complaint as "Oberndorf."

4. On information and belief, all of the partners or members of Oberndorf are citizens of Colorado. For that reason, Oberndorf is a citizen of Colorado for purposes of federal diversity jurisdiction.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 in light of the existence of complete diversity of citizenship and the amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3), in that a substantial part of the events giving rise to this action occurred in this judicial District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## THE POLICY

7. Plaintiff issued policy number ABC 80903060 to first named insured "Oberndorf Properties," with effective dates of May 10, 2015 to May 10, 2016 ("Policy").

8. The Policy includes a "Property / Liability Policy" coverage form.

9. At all times herein mentioned, the Property / Liability Policy coverage form included the following provisions, in pertinent part:

> **Section I – Property Coverages** . . .
>
> **A. Coverage** . . .
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss . . . .
>
> **E. Property Loss Conditions** . . .
>
> **2. Appraisal**
>
> If we and you disagree on the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

10. An appraisal under the Policy is not a coverage arbitration. Nor is appraisal available to resolve any and all potential disagreements regarding a claim.

3

11. Appraisal is not available to determine the existence or non-existence of coverage under the Policy.

12. Plaintiff contends that the meaning of "direct physical loss" or "damage" to "Covered Property," as those terms are used in the Policy, is a legal question that is not subject to appraisal.

13. The property-appraisal provision set forth in the Policy may apply only to one class of disputes, namely, disagreements "on the amount of the loss." The appraisal provision does not apply to other categories of disagreements, including disputes over coverage.

14. For these reasons, the Policy's property-appraisal procedure is not available to challenge a determination in the first instance by Plaintiff that property has not suffered "direct physical loss" or "damage."

15. A disagreement regarding the legal meaning of the policy terms "direct physical loss" and "damage" under the circumstances of this claim is not a disagreement "on the amount of the loss" and therefore should not be subject to appraisal.

## THE CLAIM

16. Oberndorf has made a claim under the Policy for storm damage to a building located at 250 Steele Street, Denver, Colorado 80209 ("Building").

17. The Building is a three-story commercial building.

18. Oberndorf alleges that a hail storm damaged the Building on June 24, 2015.

19. According to Oberndorf, the storm caused over $1,000,000 of building damage.

20. Oberndorf has demanded over $1,000,000 under the Policy through its agent, Derek O'Driscoll of Impact Claim Services, LLC, who collects a percentage of any insurance recovery as a contingent fee for services rendered.

21. Plaintiff has disputed coverage for Oberndorf's claim in part. Specifically, Plaintiff has disputed more than $75,000 of Oberndorf's claim.

22. Mr. O'Driscoll's contingent-fee arrangement gives him a financial incentive to maximize the size of the claim.

23. Mr. O'Driscoll's contingent-fee arrangement incentivizes him to claim inaccurately that undamaged property is damaged and must be repaired or replaced.

24. A substantial portion of Oberndorf's claim consists of Mr. O'Driscoll's allegation that Fireman's Fund has a duty to replace the Building's brick exterior.

25. Consistent with his financial incentives, Mr. O'Driscoll alleged on behalf of Oberndorf in a December 3, 2016 letter that all of the Building's brick façade must be torn down and replaced, as follows: "Our investigation of the observed anomalies on the brick façade has concluded that a significant amount of damage was caused of hailstone impact on the date of loss. Given the extent of the damages, the availability of the brick, and the inability to return the property to a pre-loss condition through spot repairs, the brick façade must be removed and replaced in its entirety."

26. In his December 3, 2016 letter, Mr. O'Driscoll did not allege that the brick façade's function or expected life had been impaired.

27. Reasonably and in good faith, Plaintiff investigated Oberndorf's claims of damage to the Building's brick façade.

28. Plaintiff determined that the brick façade of the Building sustained no identifiable "damage" from the June 24, 2015, hail storm.

29. Plaintiff also retained a highly qualified, certified engineer with relevant experience, Mr. John Peterson, M.S., P.E., of Knott Laboratory, LLC ("Knott"), to analyze and investigate, *inter alia*, Mr. O'Driscoll's claim of cosmetic brick damage.

30. Knott inspected the Building on April 26, 2016 and June 2, 2016. Knott also reviewed photographs and other evidence related to Mr. O'Driscoll's brick damage allegations.

31. Plaintiff and Knott determined that the Building is clad in a type of clay masonry brick that is original to the structure, meaning it has been in place since 1986.

32. The brick façade is over 30 years old.

33. The Building's style of brick has an intentionally distressed look, as opposed to smooth bricks more commonly used in buildings.

34. The manufacturing of the bricks leads to vertical striations, irregular texture on the faces of the bricks, and a non-uniform appearance across the brick façade.

35. Mr. O'Driscoll attended the April 26, 2016 inspection.

36. During the April site visit, Mr. O'Driscoll indicated he believed there to be damage to the brick veneer in the form of lost particles from the irregular brick surface texture.

37. Mr. O'Driscoll has also claimed in writing that he observed fractured fragments from the brick facades scattered around the property following a June 24, 2015 storm.

38. Based on the presence of these "fragments" on the ground, Mr. O'Driscoll extrapolates that there must have been a "significant amount of brick that would have been damaged on the date of loss."

39. In investigating Mr. O'Driscoll's claims, Knott contacted the Brick Industry Association ("BIA").

40. Knott transmitted to the BIA photographs of the purported brick "damage" claimed by Mr. O'Driscoll.

41. The BIA responded to Knott's inquiry.

42. The BIA explained that the brick façade has an irregular (*i.e.*, non-smooth) texture and non-uniform appearance "because before the bricks are sent to the kiln, other pieces or clay were pressed against the face of the bricks," thus "forming the weird textures you see in the pictures." The BIA continued, "[t]he brick selected for construction at this time [over 30 years ago] was specifically picked to look like this."

43. The BIA further explained that "[t]he overall performance and durability of this brick is not to be questioned, but as the brick continues to age some change is to be expected."

44. The BIA did not conclude that the brick façade had suffered damage. To the contrary, the BIA's letter indicated that the bricks depicted in the photographs appeared as expected given their age and design, and that they were undamaged.

45. The so-called "damage" identified by Mr. O'Driscoll is not damage at all.

46. Mr. O'Driscoll also claims that "damage" is manifest in "the fresh un-oxidized difference in color between the undamaged and hail spalled areas of brick façade."

47. To the contrary, Knott inspected areas of the Building that were covered and, thus, could not have been affected by the alleged June 24, 2015 storm.

48. The brick in the protected regions of the Building displayed the same qualities as exposed brick that Mr. O'Driscoll claimed had been "damaged." The same supposedly "un-oxidized" surfaces and variances in brick color existed in covered areas unexposed to storms.

49. Oberndorf has presented no evidence of material changes—cosmetic or physical—to the Building's brick façade. The brick is undamaged.

### PLAINTIFF DISPUTES COVERAGE FOR THE BRICK CLAIM

50. On October 17, 2016, Plaintiff transmitted a letter ("Coverage Letter") to Mr. O'Driscoll in his capacity as Oberndorf's agent.

51. Among other things, the Coverage Letter stated that Plaintiff had "evaluated the claim for cosmetic damage to the brick façade of the building but has determined that it will not be issuing any payment for this portion of the claim."

52. The Coverage Letter explained the results of Plaintiff's and Knott's investigation regarding the brick and informed Oberndorf that the brick façade was undamaged.

### OBERNDORF DEMANDS AN APPRAISAL OF THE BRICK CLAIM

53. Acting through its agent, Mr. O'Driscoll, Oberndorf invoked the Policy's appraisal provision on March 6, 2017.

54. Mr. O'Driscoll demanded that Plaintiff appoint an appraiser.

55. Oberndorf has not selected an appraiser and has stated in Mr. O'Driscoll's March 6, 2017 letter that it will not do so until Plaintiff first selects an appraiser.

56. Mr. O'Driscoll has demanded an appraisal of what he terms the entire "loss," including Oberndorf's demand to have the entire undamaged 30-year-old brick façade torn down and rebuilt at the expense of Plaintiff's other policyholders.

57. As to Oberndorf's brick claim, Plaintiff and Oberndorf disagree whether the brick is undamaged. The disagreement consists of Plaintiff's decision to dispute coverage for the brick claim, because the brick has not materially changed either physically or aesthetically, and Oberndorf's dispute of that coverage determination.

58. The parties' disagreement does not pertain to the "amount" of the loss.

59. Plaintiff's decision to dispute coverage for the brick claim does not come within the scope of the Policy's appraisal provision and is not subject to appraisal.

## CLAIM FOR RELIEF:
## DECLARATORY JUDGMENT REGARDING AVAILABILITY OF APPRAISAL

60. Plaintiff incorporates the prior paragraphs as if set forth in full.

61. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question in actual controversy between the parties.

62. There is a real, substantial, and justifiable issue in controversy between the parties with respect to whether Plaintiff's dispute of coverage for Oberndorf's brick claim is subject to the Policy's appraisal provision.

63. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties under the Policy.

64. Plaintiff requests that the Court determine that Oberndorf's brick claim does not come within the Policy's appraisal provision, that Oberndorf is not entitled under the Policy to an appraisal of its brick damage claim, and that Plaintiff is not obligated under the Policy to participate in an appraisal of the brick damage claim.

9

## CONCLUSION

WHEREFORE, Plaintiff Fireman's Fund Insurance Company prays for a judgment as follows:

1. An order of the Court declaring, adjudicating, decreeing, and clarifying the rights and responsibilities of Plaintiff and Oberndorf, and each of them, as follows:

   That Oberndorf's brick damage claim arising from the June 24, 2015 storm does not come within the appraisal provision of Fireman's Fund insurance policy number ABC 80903060, that Oberndorf is not entitled under policy number ABC 80903060 to an appraisal of its brick damage claim, and that Plaintiff is not obligated to engage in an appraisal of the brick damage claim.

2. An award of costs and attorney fees as may be permitted by applicable law.

3. Such other and further relief as the Court may deem proper.

Dated: April 21, 2017                    Respectfully submitted,


                                         *s/ Even Bennett Stephenson*
                                         Terence M. Ridley
                                         Evan Bennett Stephenson
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202-5647
                                         Telephone: 303.244.1800
                                         Facsimile: 303.244.1879
                                         Email: ridley@wtotrial.com
                                                stephenson@wtotrial.com

                                         Attorneys for Plaintiff

10