IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01005-PAB-SKC

FIREMAN'S FUND INSURANCE COMPANY, a California corporation,

Plaintiff,

v.

STEELE STREET LIMITED II, a Colorado limited partnership,

Defendant.

# ORDER

This matter is before the Court on Plaintiff Fireman's Fund Insurance Company's Motion for Partial Summary Judgment (Inapplicability of Appraisal Clause to Coverage Issues) [Docket No. 35] and Defendant Steele Street Limited II's Cross Motion for Partial Summary Judgment [Docket No. 43]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND [1]

This case arises out of an insurance dispute. Plaintiff issued an insurance policy to Oberndorf Properties, providing first party property coverage for a commercial building located at 250 Steele Street in Denver, Colorado. Docket No. 35 at 7, ¶¶ 1-2.[2] The policy covers "direct physical loss of or damage to" the building. *Id.*, ¶ 3. The

---

[1] The following facts are undisputed unless noted otherwise.

[2] The Complaint for Declaratory Judgment [Docket No. 1] named Oberndorf Properties, Oberndorf Properties, Ltd., and Steele Street Limited II as defendants. Docket No. 1 at 2, ¶ 3. The parties agreed to dismiss Oberndorf Properties and Oberndorf Properties, Ltd. from the case. Docket No. 31.

policy contains an appraisal provision, which provides that, "[i]f [insurer] and [insured] disagree on the amount of the loss, either may make written demand for an appraisal of the loss." *Id*. at 7-8, ¶ 4. The policy also includes an "examination under oath" clause, which states that plaintiff "may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records." Docket No. 35-2 at 46.

Defendant made a claim under the policy for over $1 million of damage allegedly caused by a hailstorm on June 24, 2015. *Id*. at 8, ¶ 5. Among the damages claimed were damage to the building's brick facade (the "brick claim"). *Id*. According to a public adjuster hired by defendant, the damage caused by the storm required the brick to be removed and replaced in its entirety. *Id*., ¶ 6. Plaintiff issued payment for some damage caused to the building, but did not make any payment for the brick claim. Docket No. 44-2. In a reservation of rights letter sent to defendant's public adjuster, an employee of plaintiff explained that

> "[b]ased on Mr. Peterson's report and [plaintiff's] investigation, [plaintiff] has concluded that the hailstorm caused no identifiable 'direct physical loss of or damage to' the brick facade. Although the hail may have resulted in some flaking of the bricks, it is impossible to identify any particular flaking that was specifically caused by the hail, nor did the building experience any significant amount of flaking in addition to what has naturally occurred from normal exposure to the elements over the past 30 years. In sum the hailstorm does not appear to have demonstrably altered either the appearance or the functionality of the brick facade in any way."

Docket No. 44-2 at 3-4.

On April 21, 2017, plaintiff filed this lawsuit. Docket No. 1. Plaintiff's sole claim

2

for relief is for a declaratory judgment that the brick claim is not included within the appraisal provision of the insurance policy, that defendant is not entitled to an appraisal of the brick claim under the insurance policy, and that plaintiff is not obligated to participate in an appraisal of the brick claim under the insurance policy. *Id*. at 9, ¶ 64. In its answer, defendant asserts five counterclaims: (1) enforcement of the policy's appraisal provision; (2) breach of contract; (3) statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and 1116; (4) common law bad faith; and (5) a declaratory judgment that defendant is excused from appearing at an examination under oath. Docket No. 11 at 20-27, ¶¶ 19-49.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

#### A. Applicability of Appraisal Provision

Plaintiff moves for partial summary judgment, asking the Court to declare that the brick flaking is not "direct physical loss" or "damage" within the meaning of the policy and therefore is not subject to appraisal. Docket No. 35 at 6-8. Defendant moves for partial summary judgment, asking the Court to determine the opposite and to stay all proceedings pending the completion of the appraisal process. Docket No. 43 at 13.

The Court's jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332(a). Therefore, the Court applies the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).[3] Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the court. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). The policy must be enforced as written unless the policy contains an ambiguity. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). The policy should be construed to give effect to the intent of the parties. *Id.* "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo. App. 2010). "[W]ords should be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

Plaintiff contends that the appraisal process does not apply to defendant's claim for brick damage because that dispute is over coverage – whether damage to the bricks is covered by the insurance policy – rather than the "amount of loss." Docket No. 35 at 6-8. Plaintiff argues that the term "amount of loss" precludes consideration of defendant's causation argument. *Id*. at 8-10. Defendant argues that it does not. Docket No. 43 at 8-10. The policy itself does not define the term "amount of loss." *See* Docket Nos. 35-2 & 35-3.

The Court agrees with the holding of another case in this district construing the same term that "the plain meaning of . . . 'amount of loss' incorporates the concept of

---

[3] The insurance policy does not contain a choice-of-law provision. *See* Docket Nos. 35-2 & 35-3 (insurance policy).

causation." *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1102 (D. Colo. 2015). Although courts around the country are divided on this question, "[t]he better-reasoned cases . . . hold [that] appraisers necessarily address causation when determining the amount of the loss from an insured event." *See Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 92 (Iowa 2018). This is because the "amount of loss" is determined with reference to a particular cause. *See Auto-Owners*, 100 F. Supp. 3d at 1102. For example, "it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage.'" *Phila. Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 818 (S.D. Ind. 2014).

Plaintiff claims that the brick claim raises a coverage question only. However, its reservation of rights letter demonstrates otherwise. *See* Docket No. 44-2. Although the letter purports to find no "direct physical loss of or damage to" the brick facade, plaintiff's conclusion is based not on policy definitions but on a causation analysis. *See id.* at 3. The letter states that "[plaintiff] has concluded that the hailstorm *caused* no identifiable [damage]," and that, "[a]lthough the hail may have *resulted* in some flaking of the bricks," the hail "does not appear to have demonstrably altered [the facade]." *See id*. at 3-4 (emphasis added). Thus, in order to reach its conclusion that no "physical loss" or "damage" occurred under the policy, plaintiff made a causation determination – whether the hailstorm caused flaking or other damage to the brick facade. Plaintiff's causation analysis is therefore of the type that is contemplated by the

6

appraisal process.[4]

Plaintiff's reliance on *Insurance Company of North America v. Baker*, 268 P. 585 (Colo. 1928), is misplaced. In *Baker*, the Colorado Supreme Court concluded that "[t]he denial by an insurer of *all liability* under a policy is a waiver of the right to an apprais[al]." *Baker*, 268 P. at 586 (emphasis added). Here, the parties do not dispute that plaintiff paid part of defendant's claim, indicating that it was liable for damages to the building caused by the June 24, 2015 hailstorm. *See* Docket No. 44 at 6, ¶ 1. *Baker* does not apply where the parties agree that there is damage, but disagree on the extent of the damage. *See Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015) (distinguishing *Baker* from a situation where the parties "disagree as to the extent of the damage caused"). The Court agrees with *Laredo Landing* and concludes that *Baker* does not apply where the parties disagree as to the "amount of loss." *Id*.

Based on the foregoing, the Court concludes that the insurance contract requires the parties to participate in an appraisal of the loss on the brick claim. Accordingly, the Court will deny plaintiff's motion for partial summary judgment.

**B.   Examination Under Oath**

In opposition to defendant's motion for partial summary judgment, plaintiff argues that defendant must submit to an "examination under oath" before any appraisal because "[d]efendant has not complied with its post-loss obligations under the subject

---

[4] Plaintiff claims that it is appropriate to separate the brick claim from other claims that plaintiff covered. *See* Docket No. 35 at 6-8. There is no need for the Court to address this issue in light of the Court's decision that causation here is within the scope of the appraisal clause.

7

insurance policy." *See* Docket No. 50 at 4. The relevant section of the policy states that plaintiff "may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed." Docket No. 35-2 at 46. Defendant, in response, argues that the first breach doctrine relieves it of that obligation because plaintiff was first to breach the contract. *See* Docket No. 51 at 4-6.

"A party who has the power of avoidance must ordinarily avoid the entire contract, including any part that has already been performed. He cannot disaffirm part of the contract that is particularly disadvantageous to himself while affirming a more advantageous part, and an attempt to do so is ineffective as a disaffirmance." Restatement (Second) of Contracts, § 383(a). Since defendant has asked the Court to affirm the appraisal provisions of the insurance contract, which are more advantageous to defendant, it cannot disaffirm the "examination under oath" provision. Defendant's invoking the first breach doctrine does not change the analysis. The first breach doctrine may be invoked in situations where the second-breaching party seeks to prevent the first-breaching party from claiming the benefit of the contract. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (applying first breach doctrine to conclude that defendant was not entitled to enforce a contract it materially breached). Here, defendant asks the Court to enforce the contract as a whole by requiring plaintiff to participate in an appraisal of the brick damage. Defendant is entitled to an appraisal, subject to the provisions of the insurance contract. Those provisions include the requirement that defendant sit for an examination under oath

8

before the appraisal can commence.

### C.   Stay of Litigation

Defendant requests that the Court stay the litigation pending the appraisal.  A court may enter a stay of proceedings incidental to its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D.Colo. Dec. 9, 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).  Courts in this district consider the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Id.* (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-KLM, 2006 WL 894955, at *2 (D.Colo. Mar. 30, 2006)).

With respect to the first three factors, it is most efficient for the parties and the Court to wait until the appraisal process is complete before proceeding with discovery and other matters.  The appraisal process should resolve key factual issues that are in dispute, such as the extent of the damage to the bricks (if any).  Accordingly, appraisal could limit the need for discovery in this case, resulting in significant cost savings to both parties.  The Court gives little weight to the fourth and fifth factors, as the Court is not aware of any significant interests of non-parties or the public that a stay would impact, either positively or negatively.  Therefore, the Court concludes that a stay is

appropriate in this case.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff Fireman's Fund Insurance Company's Motion for Partial Summary Judgment (Inapplicability of Appraisal Clause to Coverage Issues) [Docket No. 35] is **DENIED**. It is further

**ORDERED** that Defendant Steele Street Limited II's Cross Motion for Partial Summary Judgment [Docket No. 43] is **GRANTED**. It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 41.2, this case will be administratively closed. Either party may move to reopen the case for good cause. Completion of the appraisal process will constitute good cause. It is further

**ORDERED** that, not later than thirty days after completion of the appraisal process, the parties shall file a status report with the Court advising the Court whether the case should be reopened for good cause for any further proceedings in this Court or whether the case should be dismissed.

DATED February 13, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge